**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-1116-WJM-KMT

KRISTEN N. JERNIGAN,

    Plaintiff,

v.

TOUCHSTONE HEALTH PARTNERS, a Colorado nonprofit corporation f/k/a LARIMER CENTER FOR MENTAL HEALTH, and
CYNDI DODDS,

    Defendants.

---

**AMENDED ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

---

Plaintiff Kristen N. Jernigan ("Plaintiff") brings this action alleging violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(2), and related state claims, against Defendants Touchstone Health Partners ("Touchstone") and Cyndi Dodds (jointly "Defendants").  (Compl. (ECF No. 1).)  This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Motion") (ECF No. 26) as to her First Claim for Relief, and Defendants' Motion for Partial Summary Judgment ("Defendants' Motion") (ECF No. 27) as to Plaintiff's Second, Third, and Fourth Claims for Relief.  For the reasons set forth below, Plaintiff's Motion is denied and Defendants' Motion is granted.

### I. BACKGROUND

The relevant facts are as follows, and are undisputed unless otherwise noted. Plaintiff was employed as Assistant Chief Operations Officer of Child and Family

Services in the Shields Office of Touchstone (previously known as Larimer Center for Mental Health) from May 4, 2011 until September 28, 2012. (Movant's Statement of Material Facts ("MSMF") to Plaintiff's Motion (ECF No. 26-2) ¶¶ 1-2.) Defendant Dodds, a Chief Operations Officer at Touchstone, was Plaintiff's immediate supervisor. (*Id.* ¶ 9A.) At the time Plaintiff was hired, she received a copy of the Larimer Center for Mental Health Handbook ("Handbook"), and signed an Employee Acknowledgement of Receipt of the Handbook. (Plaintiff's Dep. (ECF No. 27-2) p. 10; ECF No. 27-5.)

In late March 2012, Dodds conducted an evaluation of Plaintiff that included some positive and some negative results. (MSMF ¶¶ 13-14.) Among the negative concerns on the evaluation was Plaintiff's poor working relationships with other employees. (*Id.* ¶ 14.) Following the evaluation, a number of complaints were made about Plaintiff by other employees, which complaints were each individually resolved. (*Id.* ¶ 17.)

On August 16, 2012, Dodds issued a disciplinary action form to Plaintiff due to "perceived retaliation" by Plaintiff against employees, a "hostile work environment", and an employee who had recently resigned, citing such problems with Plaintiff. (*Id.* ¶¶ 23, 27.) Plaintiff was placed on a performance improvement plan and corrective action plan as part of the disciplinary action. (*Id.* ¶ 28.) After the disciplinary action, Dodds became aware of two instances of perceived retaliation by Plaintiff against employees under her supervision, the first of which involved Plaintiff blocking certain employees from being able to view her Outlook calendar. (*Id.* ¶ 37.) The second instance of perceived retaliation involved Plaintiff administering a disciplinary action as well as a

performance improvement plan to an employee without previously discussing the disciplinary action with Dodds. (*Id.*)

On September 10, 2012, at a meeting attended by Dodds and other supervisors, Plaintiff advocated on behalf of another employee, Allisyn Hollweg, who had taken FMLA leave. (*Id.* ¶¶ 45-47.) Plaintiff had previously advocated on behalf of Hollweg because Plaintiff believed that Hollweg's supervisor appeared to be discriminating against Hollweg on the basis of her FMLA leave. (*Id.* ¶ 44.) After the meeting, Dodds informed Plaintiff of her concerns about Hollweg; the parties dispute the exact contents of Dodds's statement. (*Id.* ¶ 48; Dodds Dep. (ECF No. 29-1) pp. 168-69.)

On September 13, 2012, Plaintiff advised Dodds that she needed to take FMLA leave to care for her terminally ill father beginning on October 1, 2012, for two to six weeks. (MSMF ¶¶ 52, 55-56.) On September 21, 2012, another employee under Plaintiff's supervision resigned. (*Id.* ¶ 72.) On September 26, 2012, Dodds met with Plaintiff to discuss with her the disciplinary action that Plaintiff had administered to an employee without receiving prior approval from Dodds. (*Id.* ¶¶ 60, 62.) At this point, no possibility of termination was discussed. (*Id.*)

On Friday, September 28, 2012, at 3:00 p.m., two business hours before Plaintiff was scheduled to begin her FMLA leave the following Monday, Plaintiff was terminated from her employment. (*Id.* ¶ 63.) Defendants state that this date and time was chosen because by then, four people under Plaintiff's supervision had resigned, and Defendants feared that more resignations might occur if Plaintiff remained employed with Touchstone. (*Id.* ¶¶ 58, 66.) Defendants have presented evidence, which Plaintiff

disputes, that these four people had all identified Plaintiff or her leadership as one of their reasons for leaving their employment with Touchstone. (ECF Nos. 29-2 ¶ 27; 29-3 ¶ 30.)

Plaintiff filed this action on April 25, 2013, bringing four claims: (1) violation of the FMLA; (2) termination in violation of public policy; (3) breach of implied contract; and (4) intentional interference with contract. (ECF No. 1.) Plaintiff's First and Third Claims are asserted against Touchstone, her Second Claim is asserted against both Defendants, and her Fourth Claim is asserted only against Dodds. (*Id.*) Both Plaintiff's and Defendants' Motions for Partial Summary Judgment were filed on February 20, 2014. (ECF Nos. 26 & 27.) The parties' respective Responses were filed on March 13, 2014 (ECF Nos. 28 & 29), and their Replies were filed on March 27, 2014 (ECF Nos. 30 & 31). Both motions are ripe for disposition.

## II. LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

### III.  ANALYSIS

Plaintiff moves for summary judgment as to her First Claim, while Defendants move for summary judgment as to Plaintiff's Second, Third, and Fourth Claims. (ECF Nos. 26 & 27.)  The Court will discuss each motion and claim in turn.

**A.     Plaintiff's Motion: First Claim - FMLA**

Plaintiff moves for summary judgment solely on her First Claim, brought under the FMLA. (ECF No. 26.)  Plaintiff's First Claim alleges that Touchstone is liable for violation of the FMLA under each of two theories, a retaliation theory and an interference theory. (Compl. ¶¶ 18-22.)

1.     <u>Interference</u>

An employer that interferes with an employee's attempt to exercise her FMLA rights is liable for violating the FMLA. 29 U.S.C. § 2615(a)(1). To succeed on an interference claim, the employee must prove that: (1) she was entitled to FMLA leave; (2) an adverse action by her employer interfered with her right to take FMLA leave; and (3) the adverse action was related to the exercise or attempted exercise of her FMLA rights. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006).  The employer can defeat an interference claim by showing that it would have

taken the adverse action against the employee regardless of her attempt to take FMLA leave. *Id.*

Plaintiff argues that Touchstone is liable for violating the FMLA because it knowingly and intentionally interfered with Plaintiff's exercise of her FMLA rights when it fired her two hours before her approved FMLA leave was scheduled to begin, preventing her from taking such leave. (Compl. ¶ 21.) It is undisputed that Plaintiff was eligible to take FMLA leave, and that Plaintiff was terminated before her leave began. (*See* MSMF ¶¶ 50, 65; ECF No. 49 at 8-10.) However, Defendants argue that there is a genuine dispute of fact as to whether Touchstone would have terminated Plaintiff regardless of her attempt to take FMLA leave. (ECF No. 29 at 21-22.) Defendants point to evidence showing that Plaintiff was disciplined prior to requesting FMLA leave, and that Defendants continued to receive complaints about Plaintiff from employees after the discipline. (*Id.*) Defendants cite other evidence that they argue establishes legitimate reasons for terminating Plaintiff, including the actions she took against the complaining employees that were perceived to be retaliatory, and multiple resignations of employees under Plaintiff's supervision that were connected to complaints about Plaintiff's conduct. (*Id.*) In response, Plaintiff contends that, for various reasons, these asserted non-FMLA reasons for terminating Plaintiff were "obvious[ly]" pretextual, and that the evidence Defendants cite "do[es] not rise to the level of providing credible evidence" that Plaintiff would have been terminated without her request for FMLA leave. (ECF No. 26-3 at 14-17.)

Viewing the evidence in the light most favorable to Defendants, as the non-movants on this Motion, the Court finds that a reasonable jury could find that Plaintiff

6

would have been fired regardless of her request for FMLA leave.  This is sufficient to defeat summary judgment on Plaintiff's interference claim.  *See Metzler*, 464 F.3d at 1180.  Plaintiff's assertion that Defendants' witnesses are not credible is of no moment in the summary judgment analysis, wherein "[t]he evidence of the non-movant is to be believed" by the Court.  *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . .").  Accordingly, Plaintiff's Motion is denied as to her interference theory of FMLA liability.

    2.    <u>Retaliation</u>

A claim of retaliation under the FMLA is analyzed under a burden-shifting framework, and requires that the employee first establish a *prima facie* case by showing that (1) she engaged in a protected activity, (2) she was adversely affected by an employment decision, and (3) there was a causal connection between the protected activity and the adverse action.  *Metzler*, 464 F.3d at 1170 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)).  Once the employee establishes a *prima facie* case, the burden shifts to the employer who must demonstrate a legitimate, non-retaliatory reason for the adverse action.  *Id.* at 1172.  If the employer meets this burden, the burden shifts back to the employee to show that the employer's non-retaliatory reason is pretextual.  *Id.*

Plaintiff contends that Touchstone violated the FMLA by retaliating against her, both for her own exercise of her FMLA rights and for advocating on behalf of another employee's FMLA rights.  (Compl. ¶¶ 19-20.)  It is undisputed that Plaintiff attempted to

take FMLA leave, and was adversely affected by being terminated.[1]  (*See* MSMF ¶¶ 55, 58.)  Plaintiff does not argue that Defendants have failed to meet their burden to demonstrate non-retaliatory reasons for terminating her.  Instead, Plaintiff contends that the evidence of pretext is so strong that no reasonable jury could find that Defendants' reasons were legitimate.  (ECF No. 26-3 at 14.)

The only evidence Plaintiff cites in her Motion in support of her pretext argument is a statement by Defendant Dodds regarding Plaintiff's advocacy for Hollweg's FMLA rights, wherein Dodds allegedly stated, "No manager is ever going to hire [Hollweg] for a clinical position, and she's been a liability since I began my work here because of her need for FMLA, because of her need for leave time."  (*Id.* (citing MSMF ¶ 48).)  This statement, Plaintiff suggests, proves Dodds's hostility toward the use of FMLA leave, from which it must be inferred that Plaintiff's termination eighteen days later was a result of Plaintiff's own attempt to take FMLA leave and her advocacy for Hollweg's FMLA rights.  However, Dodds's alleged statement is not an undisputed fact.  Dodds does not dispute the first clause, that no manager would hire Hollweg for a clinical position, but Dodds denies saying that Hollweg was a liability because of her need for FMLA leave.  (ECF No. 29 at 7-8 (citing Dodds Dep. pp. 168-69).)  Instead, Dodds testified that she recalled referring to Hollweg as a liability "in regards to client quality-of-care concerns and staff cancellations."  (*Id.*)  While Dodds admitted that these concerns were largely due to Hollweg's absenteeism, she stated that such absenteeism was caused by multiple

---

[1] Neither party argues the causation prong of the *prima facie* case.  However, because the Court concludes that the Motion fails at a later stage of the burden-shifting analysis, the Court will assume that causation is satisfied for the purposes of evaluating Plaintiff's Motion.

reasons, not solely Hollweg's FMLA leave.  (*See* Dodds Dep. p. 169.)

Viewing the evidence in the light most favorable to Defendants, Dodds's statement is insufficient to show that no reasonable jury could believe Defendants' non-retaliatory reasons for terminating Plaintiff.  Even if the content of Dodds's statement were not in dispute, a reasonable jury could still find that Defendants' non-retaliatory reasons for terminating Plaintiff were legitimate based on the prior disciplinary action, reports of employee complaints, and employee resignations.  Accordingly, Plaintiff has failed to show that she is entitled to judgment as a matter of law on her retaliation claim.

As Plaintiff has failed to show that summary judgment is warranted on either of her theories of liability on her First Claim for Relief, Plaintiff's Motion is denied in its entirety.

**B.    Defendants' Motion**

Defendants move for summary judgment on Plaintiff's Second, Third, and Fourth Claims.  (ECF No. 27.)  The Court will discuss each claim in turn.

1.    <u>Second Claim - Termination in Violation of Public Policy</u>

Plaintiff's Second Claim for Relief is brought against both Defendants, and alleges that Plaintiff was terminated in violation of public policy.  (Compl. ¶¶ 23-27.) Defendants' Motion contends that Plaintiff has failed to establish essential elements of this claim, such as the requirement to show that she was directed to perform an illegal act or prohibited from performing a public duty.  (ECF No. 27 at 7-8.)  In Plaintiff's Response, she states that she agrees with Defendants' arguments as to her Second Claim, and "therefore agrees to a dismissal of that claim against both Defendants." (ECF No. 28 at 1.)

Plaintiff has conceded the absence of an essential element of her Second Claim, and has confessed Defendants' Motion as to that claim. As such, the Court grants Defendants' Motion as to Plaintiff's Second Claim for termination in violation of public policy.

### 2. Third Claim - Breach of Implied Contract

Plaintiff's Third Claim, for breach of an implied contract, is asserted solely against Touchstone. (Compl. p. 7.) Plaintiff's Complaint alleges that Touchstone's policies and procedures, particularly those contained in the Handbook, constituted an implied contract that Touchstone breached by terminating Plaintiff without complying with the progressive disciplinary procedures described therein. (*Id.* ¶¶ 28-32.) Defendants do not dispute that the Handbook contains a policy establishing a progressive disciplinary procedure prior to termination; rather, they argue that the Handbook did not constitute an implied contract as a matter of law because it contained a clear and conspicuous disclaimer. (ECF No. 27 at 9-10; ECF No. 30 at 4-9.)

Under Colorado law, termination procedures in an employee manual may be enforceable as an implied contract under certain circumstances. *Jaynes v. Centura Health Corp.*, 148 P.3d 241, 247 (Colo. App. 2006) (citing *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987)). However, if the manual contains a "clear and conspicuous" disclaimer of contractual rights, no implied contract is created unless the manual also contains mandatory termination procedures or requires "just cause" for termination. *Id.* at 248 (citing *Evenson v. Colo. Farm Bureau Mut. Ins. Co.*, 879 P.2d 402, 409 (Colo. App. 1993)). Whether a disclaimer is clear and conspicuous is a

question of law.  *Id.*

Here, the Handbook contains a disclaimer in bold, capital letters under the heading "About the Employee Handbook" that reads, in pertinent part, as follows:

> EMPLOYEES HAVE THE RIGHT TO END THEIR WORK RELATIONSHIP WITH TOUCHSTONE, WITH OR WITHOUT ADVANCE NOTICE FOR ANY REASON.  TOUCHSTONE HAS THE SAME RIGHT.  THE LANGUAGE USED IN THIS HANDBOOK AND ANY VERBAL STATEMENTS MADE BY MANAGEMENT ARE NOT INTENDED TO CONSTITUTE A CONTRACT OF EMPLOYMENT, EITHER EXPRESS OR IMPLIED.

(ECF No. 27-6 p. 4.)  The Court considers this language to be clear and conspicuous.  *Cf. Jaynes*, 148 P.3d at 248; *George v. Ute Water Conservancy Dist.*, 950 P.2d 1195, 1198 (Colo. App. 1997).  This finding is supported by a similar disclaimer on the Acknowledgement of Receipt of the Employee Handbook, which Plaintiff signed at the beginning of her employment with Touchstone.  (ECF No. 27-5); *see also Jaynes*, 148 P.3d at 248 (finding disclaimer in handbook to be clear and conspicuous, creating no implied contract with the plaintiff, "especially in light of her admission to having read the [handbook]").

Plaintiff does not explicitly admit that the disclaimer is clear and conspicuous, but neither does she cite any authority supporting a contrary finding.  (*See* ECF No. 28 at 27-29.)  Rather, Plaintiff argues that the progressive discipline procedures in the Handbook constituted a mandatory termination policy that invalidates the legal effect of the disclaimer.  (*Id.* (citing *Allabashi v. Lincoln Nat'l Sales Corp.*, 824 P.2d 1 (Colo. App. 1991); *Evenson*, 879 P.2d at 408-09).)  However, the cases Plaintiff cites are distinguishable, both by the absence of a clear and conspicuous disclaimer, and by the

strong evidence in those cases that the termination procedures were mandatory. *See Allabashi*, 824 P.2d at 3; *Evenson*, 879 P.2d at 409. In contrast, the Handbook here contains a disclaimer that expressly indicates that an employee may be terminated, or may resign, at any time without notice. (ECF No. 27-6 p. 4.) The inclusion of such language in the Handbook is undisputed. (*See* ECF No. 28 at 7-8.) Therefore, the progressive disciplinary policy is not a mandatory termination procedure, because the disclaimer contains undisputed, express language confirming that employment was purely at will. Indeed, Plaintiff admits that she was an at-will employee. (ECF No. 28 at 27.)

The Court finds that the Handbook did not contain any language invalidating the effect of the clear and conspicuous disclaimer, and thus the Handbook created no implied contract as a matter of law. Accordingly, Defendants' Motion is granted as to Plaintiff's Third Claim for breach of implied contract.

       3.      Fourth Claim - Intentional Interference With Contract

Plaintiff's Fourth Claim, for intentional interference with contract, is asserted only against Dodds, and alleges that Dodds is liable for intentional interference with the employment contract between Plaintiff and Touchstone because Dodds caused Plaintiff's employment to be terminated. (Compl. ¶¶ 33-35.) Defendants argue that this claim fails because Plaintiff has presented no evidence that Dodds was motivated solely by animus toward Plaintiff, and thus Dodds is not liable for intentional interference as a matter of law. (ECF No. 27 at 10-12.)

Under Colorado law, "an agent who, while acting within the scope of official duties, causes his or her principal to breach a contract generally will not be held liable

for tortious interference with that contract." *W.O. Brisben Cos., Inc. v. Krystkowiak*, 66 P.3d 133, 136 (Colo. App. 2002), *aff'd*, 90 P.3d 859 (Colo. 2004).  The agent may be held liable, however, when she acts not even partly in service of the corporation's interests, but instead acts solely "out of personal animus towards one or both of the contracting parties." *Id.*; *see also Rudd v. Burlington Coat Factory Warehouse of Colo., Inc.*, 388 F. Supp. 2d 1201, 1207 (D. Colo. 2005).

Plaintiff cites evidence that she was not informed that her job was in jeopardy, that her job performance was improving after she received disciplinary action, and that she was never given the opportunity to rebut the claims made about her by the complaining employees.  (ECF No. 28 at 29-30.)  However, in order to find in Plaintiff's favor, a jury would have to find that none of Defendants' stated reasons for terminating Plaintiff were even partial motivations for Dodds's decision to fire her, and that Dodds's sole motive was to retaliate against and harass Plaintiff.  *See Rudd*, 288 F. Supp. 2d at 1207.  Even taking the evidence in the light most favorable to Plaintiff, the Court finds no evidence in the record that permits a reasonable jury to conclude that Dodds acted solely out of malice or animus toward her, and Plaintiff cites none.  (*See* ECF No. 28 at 29-30.)  Accordingly, Defendants' Motion is granted as to Plaintiff's Fourth Claim for intentional interference with contract.

In sum, the Court has granted summary judgment in Defendants' favor as to Plaintiff's Second Claim against both Defendants, her Third Claim against Touchstone, and her Fourth Claim against Dodds.  Plaintiff's First Claim is the sole remaining claim, and it is asserted only against Touchstone.  (*See* Compl. p. 6.)  As such, Defendant

Dodds shall be dismissed as a defendant.

## IV.  CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Plaintiff's Motion for Partial Summary Judgment (ECF No. 26) as to her First Claim for Relief is DENIED;

2. Defendants' Motion for Partial Summary Judgment (ECF No. 27) as to Plaintiff's Second, Third, and Fourth Claims for Relief is GRANTED and judgment shall enter in favor of Defendants on those claims at the conclusion of this action;

3. As no claim remains pending against Defendant Cyndi Dodds, she is DISMISSED as a defendant and shall be removed from the caption in future filings; and

4. This action remains pending as to Plaintiff's First Claim for Relief against Defendant Touchstone Health Partners, and shall proceed to trial as previously scheduled, commencing on June 29, 2015.

Dated this 9th day of September, 2014.

BY THE COURT:

William J. Martinez
United States District Judge